UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ALLIED SALES DRIVERS &
WAREHOUSEMEN, LOCAL
NO. 289, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS
and TEAMSTERS LOCAL NO. 120,

       Plaintiffs,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 10-4975 (MJD/LIB)

SARA LEE BAKERY GROUP,
SARA LEE CORPORATION,

       Defendant.

James T. Hansing, Hansing Law Office, Counsel for Plaintiffs.

Cynthia A. Bremer, Patrick R. Martin, and Jody A. Ward-Rannow, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction. [Docket No. 5] The Court heard oral argument on January 3, 2011. Because there is no threat of irreparable harm, nor any need to preserve the status quo to protect the arbitration process, the motion is denied.

1

## II. BACKGROUND

### A. Factual Background

#### 1. The Parties

Plaintiffs are Allied Sales Drivers and Warehousemen, Local No. 289, International Brotherhood of Teamsters, and Teamsters Local No. 120 (collectively, "Unions" or "Plaintiffs"). Defendant is Sara Lee Corporation ("Sara Lee"). Sara Lee operates a bakery in Fergus Falls, Minnesota.

Plaintiffs represent bargaining units consisting of various groups of Sara Lee's Fergus Falls bakery employees. This lawsuit relates only to the bargaining unit comprised of transport drivers formerly employed by Sara Lee.

#### 2. The CBA and Its Outsourcing Provision

Sara Lee and the Unions are parties to a collective bargaining agreement covering the sales employees, mechanics, and transport drivers ("CBA"). By its terms, the CBA was effective October 14, 2007, through October 9, 2010.

The CBA includes an Outsourcing Agreement. This Outsourcing Agreement permits Sara Lee to outsource the transport drivers to a new employer, but requires that the new employer recognize the Unions as the "duly authorized bargaining representative" for the drivers. It also provides:

> The parties agree that in the event Sara Lee makes a decision to outsource transportation/mechanic and subsequently changes subcontractors for transportation function at its Fergus Falls, MN locations, Sara Lee will require any new subcontractor to accept the then current labor agreement for the remaining term of that agreement.

### 3. Sara Lee's Outsourcing to UPS

In August 2010, Sara Lee reached an agreement with UPS Freight to outsource the Fergus Falls transport driver work previously done directly by Sara Lee. Sara Lee decided that the outsourcing would be implemented on October 10, 2010, because that was the day after the CBA with Sara Lee's 16 transport drivers expired. Sara Lee entered the outsourcing agreement with UPS Freight for the October 10 date, and UPS, in turn, subcontracted with TDI Nationwide, Inc. ("TDI"), to provide the actual transport driver labor and management.

On August 26, 2010, Sara Lee notified Plaintiffs that it intended to subcontract out the transport work covered by the CBA.

### 4. Negotiations Between the Unions and TDI

On August 27, 2010, TDI informed the Unions that TDI would be handling the transport duties. On September 1, 2010, TDI met with the Unions and began negotiating regarding a new CBA between TDI and the Unions governing the

3

transport drivers. At that time, TDI informed the Unions that it would recognize the Unions as the bargaining representative for the transport drivers and would bargain with them. It also presented the Unions with a proposed CBA for the transport drivers. TDI represented that it would not accept the pension obligations contained in the Sara Lee CBA. TDI and the Unions have not yet agreed on a new CBA.

All 16 transport drivers have accepted TDI's offer of employment and became employed by TDI on October 10. On October 10, 2010, TDI became the successor employer of 16 transport drivers employed by Sara Lee. TDI ceased making pension payments and offered only its own insurance and benefit plans.

### 5. Extension of the CBA

During the fall of 2010, the Unions and Sara Lee were negotiating a new CBA. To facilitate the negotiations, Sara Lee and the Unions signed an Extension Agreement to cover the period from October 10, 2010 through December 31, 2010. Sara Lee signed this Extension on September 27, 2010, and the Unions signed it on October 6, 2010.

The Extension did not state whether or not the transport drivers were covered by the Extension. The Unions claim that they were, and Sara Lee claims that they were not.

Sara Lee and the Unions are still negotiating a new CBA for the sales employees and mechanics. Even with the Extension, the Sara Lee CBA expired on December 31, 2010; no further extensions have been reached.

### 6. Sara Lee Operations Changes Since October 10, 2010

After the October 10 outsourcing, Sara Lee sold its transport tractors to other companies, persons, or scrap recyclers. It could not restart its own transport driver operations unless it purchased or rented new trucks. It has also reorganized its supervisory personal.

Sara Lee does not yet knew what penalties it would incur from UPS Freight if Sara Lee had to exit the UPS Freight/TDI contract early. However, it estimates that the penalties could be more than $1 million due to the amount of equipment that UPS Freight ordered – 14 or 15 tractors worth $80,000 to $100,000 each – and the length of the leases involved.

### 7. The Unions' Complaint to Sara Lee

On October 7, 2010, Plaintiffs informed Sara Lee that TDI did not intend to comply with the terms of the Outsourcing Agreement. The October 7 letter also stated that it was a complaint within the meaning of the CBA. Plaintiffs requested that Sara Lee "suspend all action relative to the outsourcing of bargaining unit work to TDI Nationwide."

On October 11, 2010, Sara Lee responded that it was "following the terms of the letter of understanding that was negotiated [i]n 2007." It further refused to provide the Unions with information regarding the details of the outsourcing transaction.

On October 15, 2010, Plaintiffs sent a letter to Sara Lee demanding mandatory arbitration under Article 10 of the CBA.

### 8. Bonebrake Grievance

On November 9, 2010, TDI terminated Larry Bonebrake, a transport driver formerly employed by Sara Lee and then employed by TDI. The Sara Lee CBA prevents discharge except for "just cause." After TDI terminated Bonebrake, on November 15, 2010, the Unions filed a grievance with both Sara Lee and TDI and requested arbitration regarding Bonebrake's termination. TDI responded that it

was "under no obligation to pursue this issue." Sara Lee did not respond to the Unions' letter.

### B. Procedural Background

On December 15, 2010, Plaintiff filed a Complaint and ex parte motion for a temporary restraining order against Sara Lee in Otter Tail County, Minnesota court. The Complaint asserts an action for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs allege that Sara Lee has violated the Outsourcing Agreement by subcontracting the Fergus Falls transportation to TDI, but not forcing TDI to agree to make pension payments or continue the Sara Lee health insurance benefits.

The state court set oral argument on the motion for a temporary restraining order for December 23, 2010. On December 23, Sara Lee removed the case to this Court based on both federal question and diversity jurisdiction.

Plaintiffs have now filed a motion for a preliminary injunction to enjoin Sara Lee from continuing to transfer and subcontract any transport delivery work to TDI. Sara Lee admits that the Unions' complaint is arbitrable. However,

Sara Lee opposes entry of an injunction that would undo the already completed Sara Lee-TDI outsourcing transaction.

## III. DISCUSSION

### A. Mandatory Arbitration

Sara Lee does not dispute that a valid agreement to arbitrate exists. Sara Lee also admits that the Unions' complaint is arbitrable. Therefore, the parties agree that this case should be determined in mandatory arbitration. The only question before the Court is whether it should issue an injunction requiring Sara Lee to undo the outsourcing to TDI and re-hire the 16 transport drivers.

### B. Whether Plaintiffs Are Entitled to a Temporary Restraining Order

Plaintiffs argue that an injunction is warranted to maintain the status quo between the parties so that a meaningful arbitration can occur.

#### 1. Norris-LaGuardia Act

Generally, the Norris-LaGuardia Act provides that "[n]o court . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter." 29 U.S.C. §101. An exception to this prohibition applies when employers take certain actions such that, without

an injunction, the arbitral process would be frustrated and would be rendered a "hollow formality." Lever Bros. Co. v. Int'l Chemical Workers Union, Local 217, 554 F.2d 115, 123 (4th Cir. 1976).

> An injunction to preserve the status quo pending arbitration may be issued either against a company or against a union in an appropriate . . . case where it is necessary to prevent conduct by the party enjoined from rendering the arbitral process a hollow formality in those instances where . . . the arbitral award when rendered could not return the parties substantially to the status quo ante.

Id.

Here, Sara Lee warned the Unions of its intention to outsource on August 26; TDI informed the Unions that it did not intend to abide by the Sara Lee CBA on September 1; and the outsourcing was completed on October 10. By the time the Unions filed the current case and motion, any damage had already occurred. The Court cannot preserve the status quo that existed before October 10, as that situation no longer exists. Sara Lee has sold its trucks and changed its structure. Plaintiffs' members have been employed by TDI for months. Even if the Unions are correct that the Extension applies to the drivers, the Sara Lee CBA expired last week, on December 31. There is simply no basis for an injunction at this point.

The cases relied upon by Plaintiff involve courts enjoining sales or transfers <u>before</u> they occur on the grounds that, once the sale is completed, the harm becomes irreparable. Here, the outsourcing was already completed months ago. The Unions had ample warning of the outsourcing and TDI's intention to disregard the Sara Lee CBA before the outsourcing occurred. They waited too long before bringing this motion.

Moreover, the Unions have failed to meet the requirements of the <u>Dataphase</u> test.

### 2. <u>Dataphase</u> Factors

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions. <u>Dataphase Sys. Inc. v. CL Sys., Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981) (en banc ). This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits. <u>Id.</u>

#### a) Likelihood of Success on the Merits

The parties agree that the arbitrator will determine the merits of the Unions' claims. At this point, the Court cannot make a definitive prediction regarding the Unions' success on the merits, except to say that this factor does not weigh strongly one way or the other in the Court's decision on the propriety of an injunction.

### b) Threat of Irreparable Harm

Plaintiffs argue that the transport drivers they represent have already suffered irreparable harm because they have been denied health and welfare benefits and the arbitration process has been frustrated. Also, because both Sara Lee and TDI have failed to process Bonebrake's grievance, he is left without a remedy to protect his job and the benefits of his employment.

The Court holds that there is no threat of irreparable harm for three main reasons: timing, adequate money damages, and a forum for Bonebrake.

### (1) Timing

The outsourcing occurred on October 10, 2010, more than two months before the Unions filed the current motion. Moreover, the Unions were informed of the outsourcing and TDI's intention to disregard the Sara Lee CBA, more than four months ago. However, the Unions failed to bring a motion before the

11

outsourcing was implemented. They waited until after Sara Lee had sold its trucks, the drivers had been transferred, and the outsourcing was fully implemented. Any harm occurred before this action was filed.

### (2)    Adequate Money Damages

The Eighth Circuit has held that the loss of health benefits does not constitute irreparable harm. See Local Union No. 884 v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1354-55 (8th Cir. 1995). See also IBT/HERE Employee Representatives' Council v. Gate Gourmet Div. Americas, 377 F. Supp. 2d 54, 62-63 (D.D.C. 2005). Additionally, Article 24 of the Sara Lee CBA identifies the required coverage levels for employees, but also provides that "the selection of a specific insurance carrier, provider, network, or alliance will be at the Company's option and may be changed by the Company during the term of the Agreement." The Unions have presented no evidence of any extra expenses incurred by drivers under TDI's health insurance.

Moreover, Sara Lee can easily calculate the lost pension benefits from October 10 through December 31, 2010. Under Article 25 of the Sara Lee CBA, Sara Lee was required to contribute $156.20 per week per employee into the pension fund.

### (3) Forum for Bonebrake

After Plaintiffs filed their motion, TDI agreed to provide a forum for Bonebrake's grievance. Specifically, TDI has offered Bonebrake grievance rights consistent with the CBA proposal offered by TDI on September 1. Therefore, he does have an outlet for his grievance. Because Bonebrake now has a grievance forum, he faces no irreparable harm. Moreover, at this point, the Court could not order Bonebrake to arbitrate with Sara Lee, as he was employed by TDI when he was terminated.

#### c) Balance of the Harms

Sara Lee faces the possibility of substantial harm from the injunction. It would have to rehire the drivers, purchase or lease new trucks, and possibly pay more than $1 million for the trucks that UPS Freight has ordered for TDI due to the outsourcing.

The drivers will suffer no irreparable harm without the injunction. They have jobs with TDI at the same general pay and benefits as they had with Sara Lee. They can pursue their asserted damages through arbitration. Bonebrake currently has access to a grievance procedure.

#### d) Public Interest

13

The public interest does not support issuing an injunction to attempt to unwind the outsourcing, months after the fact, causing potential damages over more than $1 million in damages to Sara Lee, when Plaintiffs' harm can be remedied through monetary damages.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Preliminary Injunction [Docket No. 5] is **DENIED**.


Dated:   January 5, 2011            s/ Michael J. Davis
                                    Michael J. Davis
                                    Chief Judge
                                    United States District Court