## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ALLIED SALES DRIVERS &
WAREHOUSEMEN, LOCAL
NO. 289, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS
and TEAMSTERS LOCAL NO. 120,

        Plaintiffs,


v.
                **MEMORANDUM OF LAW & ORDER**
                Civil File No. 10-4975 (MJD/LIB)


SARA LEE BAKERY GROUP,
SARA LEE CORPORATION,

        Defendant.

---

James T. Hansing, Hansing Law Office, Counsel for Plaintiffs.

Cynthia A. Bremer, Patrick R. Martin, and Jody A. Ward-Rannow, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Counsel for Defendant.

---

## I.      INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment.  [Docket No. 136]  The Court grants Defendant's motion because there was no "remaining term" of the Collective Bargaining Agreement at the time Defendant outsourced the transport drivers.

## II.    BACKGROUND

### A.    Factual Background

#### 1.    The Parties

Plaintiffs are Allied Sales Drivers and Warehousemen, Local No. 289,

International Brotherhood of Teamsters, and Teamsters Local No. 120

(collectively, "Unions" or "Plaintiffs").  Defendant is Sara Lee Corporation ("Sara

Lee").[1]  Sara Lee operates a bakery in Fergus Falls, Minnesota.

Plaintiffs represent bargaining units consisting of various groups of Sara

Lee's Fergus Falls bakery employees.  This lawsuit relates only to the bargaining

unit comprised of transport drivers formerly employed by Sara Lee.

#### 2.    The CBA and Its Outsourcing Provision

Sara Lee and the Unions were parties to a collective bargaining agreement

covering the sales employees, mechanics, and transport drivers, which, by its

terms, was effective "from October 14, 2007, to and including October 9, 2010."

("CBA").  (Martin Decl., Ex. A, DeBuck Dep., Ex. 2, CBA at 22.)

---

[1] According to Defendant, on November 5, 2011, the Fresh Bakery division of the Sara Lee Corporation, known as Earthgrains Baking Companies, Inc., was sold and became part of BBU, Inc.  Therefore, Earthgrains is the true defendant. However, because Sara Lee owned Earthgrains and its Fergus Falls bakery at all relevant times, the parties continue to use the term "Sara Lee" to refer to Defendant in their briefs. ([Docket No. 138] Opening Brief at 1 n.1.)

In March 2008, Sara Lee and the Unions entered into an Outsourcing Agreement.  (Martin Decl., Ex. A, DeBuck Dep., Ex. 1, Outsourcing Agreement.) The Outsourcing Agreement permits Sara Lee to outsource the transport drivers to a new employer, but requires that "the new contracted company" "fill its employment needs from the current transport drivers/mechanics who meet its qualifications" and recognize the Unions as the "duly authorized bargaining representative" for the drivers.  (Outsourcing Agreement ¶ 2.)

The paragraph of the Outsourcing Agreement at issue in this lawsuit, Paragraph 5, provides:

> The parties agree that in the event Sara Lee makes a decision to outsource transportation/mechanic and subsequently changes subcontractors for transportation function at its Fergus Falls, MN locations, Sara Lee will require any new subcontractor to accept the then current labor agreement for the remaining term of that agreement.

Michael DeBuck negotiated and signed the Outsourcing Agreement on behalf of the Unions, and Steve Waltz negotiated and signed on behalf of Sara Lee.  (DeBuck Decl. ¶¶ 1-4.)

### 3.    Sara Lee's Outsourcing to UPS

On July 19, 2010, UPS project manager, David Strange, made a proposal to Sara Lee for outsourcing the transport drivers.  (Martin Decl., Ex. F, Dec. 27, 2011

Fischer Dep. 45-46; Martin Decl., Ex. G, Strange Dep. 45; Strange Dep., Exs. 14-15.)  The UPS proposal included two outsourcing options – Sara Lee would contract with UPS and IMSCO would provide labor or Sara Lee would contract with UPS and Transport Drivers, Inc. ("TDI") would provide labor.  (Dec. 27, 2011 Fischer Dep. 45-46; Martin Decl., Ex. G, Strange Dep. 32, 35, 41, 44-46, 48-49; Hansing Decl., Ex. C, Strange Dep., Exs. 13-15.)  After discussions between UPS's Strange and Sara Lee's Allen Fischer, Sara Lee selected UPS option two, with TDI providing the labor.  (Martin Decl., Ex. G, Strange Dep. 45-46.)

On August 26, 2010, Sara Lee's Director of Labor Relations, Jack Grissom, notified DeBuck that Sara Lee was exercising its rights under the Outsourcing Agreement and would outsource the transport driver positions as of October 10, 2010.  (Martin Decl., Ex. P, Pls. RFA Nos. 1-2; DeBuck Dep. 58-59; Martin Decl., Ex. H, Grissom Dep. 14.)  Also on August 26, James Reader, Sara Lee's Fergus Falls Plant Manager, informed the transport drivers and the Unions that Sara Lee would be outsourcing on or before October 10, 2010.  (Martin Decl., Ex. N, Reader Decl. ¶ 2; Reader Decl., Exs. A-B.)

4

### 4.     Negotiations Between the Unions and TDI

On August 27, 2010, TDI informed the Unions that TDI would be handling

the transport labor.  (Martin Decl., Ex. K, DeBuck Aff. ¶ 9.)  On September 1,

2010, TDI's President, Jon Formento, met with DeBuck and began negotiating

regarding a collective bargaining agreement between TDI and the Unions

governing the 16 transport drivers.  (Martin Decl., Ex. L, Formento Decl. ¶ 3;

Martin Decl., Ex. A, DeBuck Dep. 80.)  At that time, TDI informed the Unions

that it would recognize the Unions as the bargaining representative for the

transport drivers and would bargain with them.  (Formento Decl. ¶ 3.)  It also

presented the Unions with a proposed collective bargaining agreement for the

transport drivers, which recognized existing pay and seniority and provided a

grievance procedure, health insurance, and 401(k) benefits.  (Id.)  TDI

represented that it would not accept the Central States pension contribution

obligations contained in the Sara Lee CBA.  (DeBuck Dep. 45.)  TDI and the

Unions have not yet agreed on a new collective bargaining agreement, but they

have continued to negotiate.  (Formento Decl. ¶ 3.)

On September 27, 2010, TDI sent an offer of employment to all 16 Sara Lee

transport drivers.  (Formento Decl. ¶ 5; Formento Decl., Ex. B.)  The offer letter

states, in part: "Please allow this correspondence to serve as our offer of

employment for the position of D.O.T. Qualified CDL 'transport driver'

domiciled in Fergus Falls, Minnesota beginning Sunday, October 10, 2010."

(Formento Decl., Ex. B.)

All 16 transport drivers accepted TDI's offer of employment and became

employed by TDI on October 10, 2010.  (Formento Decl. ¶ 5; Martin Decl., Ex. P,

Pls. RFA Resp. No. 12.)  There is no collective bargaining agreement between the

Unions and TDI, so TDI pays the transport drivers the same wages that Sara Lee

paid on October 9, 2010.  (Pls. RFA Resp. Nos. 7, 13.)  The transport drivers have

the option of enrolling in TDI benefits, such as health insurance and a 401(k)

plan.  (Formento Decl. ¶ 4; Formento Decl., Ex. A; Pls. RFA Resp. No. 8.)

## 5.    Extension of the CBA

During September and October 2010, while the Unions negotiated with

TDI for a collective bargaining agreement covering the transport drivers, the

Unions and Sara Lee separately negotiated for a new collective bargaining

agreement for the sales employees and mechanics who would continue to be

Sara Lee employees after the outsourcing.  (Martin Decl., Ex. M, Grissom Decl. ¶

4.)  Sara Lee and the Unions signed an extension to the CBA to facilitate those

negotiations.  (Grissom Decl. ¶ 5; Grissom Decl., Ex. A.)

Sometime before September 26, 2010, Grissom drafted and forwarded a proposed written extension of the 2007-2010 CBA that was set to expire on October 9, 2010.  (Hansing Decl., Ex. B, Grissom Dep. 12-13; Grissom Decl., Ex. A.)  Grissom signed it on September 26, 2010, and DeBuck signed it on October 6, 2010.  The Extension Agreement provided that the CBA was "extended until 12:01 a.m., December 31, 2010.  Further, [Sara Lee] hereby agrees to incorporate a retroactive application of all negotiated items into the Memorandum of Agreement resulting from negotiations completed during this extension period." (Grissom Decl., Ex. A.)

Grissom avers that, at the time of the signing, he was the authorized bargaining representative for Sara Lee only with regard to the sales employees and mechanics.  He did not possess bargaining authority for the transport drivers, because Formento had already assumed the bargaining authority for the employer of the transport drivers, TDI.  (Grissom Decl. ¶ 7; Martin Decl., Ex. H, Grissom Dep. 14-15.)  At the time, DeBuck was negotiating with TDI regarding a new collective bargaining agreement for the transport drivers with TDI – they first met on September 1, 2010.

On October 28, 2011, Sara Lee and the Unions executed a new collective bargaining agreement for Sara Lee's sales employees and mechanics.  (Martin Decl., Ex. A, DeBuck Dep. 16-19, 50; Martin Decl., Ex. Q.)  The term for the new collective bargaining agreement is "from October 10, 2010, to and including October 6, 2013."  (Martin Decl., Ex. Q at 23.)  The new collective bargaining agreement "embodies the entire agreement between the parties."  (Id. at 22.)

### 6. The Unions' Complaint to Sara Lee

On October 7, 2010, the Unions sent a letter to Sara Lee, purporting to be a complaint under the CBA, stating that TDI did not intend to comply with the terms of the Outsourcing Agreement.  (Compl., Ex. F.)  On October 11, 2010, Sara Lee responded that it was "following the terms of the letter of understanding that was negotiated [i]n 2007."  (Compl., Ex. G.)  On October 15, 2010, Plaintiffs sent a letter to Sara Lee demanding mandatory arbitration under Article 10 of the CBA.  (Compl., Ex. H.)

On October 29, 2010, DeBuck wrote a letter to Grissom and Formento asserting that Sara Lee was breaching the CBA by not requiring TDI to accept all terms of the CBA, in particular, the health care and pension provisions of the CBA.  (Compl., Ex. I.)  On November 8, 2010, TDI president Formento wrote the

Unions that, while it was "TDI's intent to recognize" and bargain with the

Unions, "TDI has no obligation or intent to accept the expired collective

bargaining agreement."  (Compl., Ex. J.)

###     7.     Bonebrake Grievance

On October 31, 2010, Larry Bonebrake, a TDI transport driver formerly

employed by Sara Lee, had an accident.  (Martin Decl., Ex. D, Bonebrake Dep. 47-

49.)  He characterized the accident as based on "my own stupidity" in not

"pull[ing] my trailer brake as I usually did" while at a gas station and, thus,

running into an electronic sign.  (Id. 47.)

On November 9, 2010, TDI terminated Bonebrake on the grounds that he

failed to properly report the accident, falsified his employment application (by

failing to list two prior preventable accidents he had while he was employed by

Sara Lee), and had three preventable accidents within 5 years.  (Martin Decl., Ex.

K, DeBuck Aff. ¶ 21; Martin Decl., Ex. D, Bonebrake Dep., Exs. 21, 25.)

On November 15, 2010, the Unions filed a grievance with Sara Lee and TDI

regarding Bonebrake's termination, demanding arbitration.  (DeBuck Aff. ¶ 21.)

Sara Lee and TDI declined to process the grievance.  (Id.)  Bonebrake did not ask

the Unions to file the grievance and did not know they had filed a grievance.

(Bonebrake Dep. 70.)  He does not believe that filing a grievance would change

his termination.  (<u>Id.</u>)

In connection with the Unions' preliminary injunction motion in December

2010, TDI offered Bonebrake the grievance procedure from TDI's collective

bargaining agreement proposal.  (Martin Decl., Ex. L, Formento Decl. ¶ 6.)  In its

Order denying the motion for the preliminary injunction, this Court held that

Bonebrake had a forum for his grievance with TDI.  ([Docket No. 16] Jan. 5, 2011

Order at 13.)  To date, the Unions refuse to participate in the TDI grievance

procedure because of the conditions imposed by TDI.  (Martin Decl., Ex. B,

Masica Dep. 19.)  The Unions have not informed Bonebrake that TDI offered to

hear the grievance or that they refused TDI's offer.  (Bonebrake Dep. 70.)

## B.   Procedural Background

On December 15, 2010, the Unions filed a Complaint and motion for a

temporary restraining order against Sara Lee in Minnesota state court, Otter Tail

County.  The Complaint asserts an action for breach of a collective bargaining

agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. §

185.  Plaintiffs allege that Sara Lee violated the Outsourcing Agreement by

subcontracting the Fergus Falls transportation to TDI, but not requiring TDI to

agree to make pension payments to the Central States Pension Fund or continue

10

the Sara Lee health insurance benefits.  The Unions sought to require Sara Lee to arbitrate the issue of whether it violated the outsourcing provision in the CBA.

On December 23, 2010, Sara Lee removed the case to this Court.  Plaintiffs filed a motion for a preliminary injunction to enjoin Sara Lee from continuing to transfer and subcontract any transport delivery work to TDI.  Sara Lee admitted that the Unions' complaint is arbitrable.  On January 5, 2011, the Court denied Plaintiffs' Motion for Preliminary Injunction.  [Docket No. 16]  The Court held that there was no threat of irreparable harm, nor any need to preserve the status quo to protect the mandatory arbitration process.

In connection with the motion for a preliminary injunction, all parties agreed that the Unions' complaint was arbitrable and should be determined in mandatory arbitration.  On January 11, 2011, Sara Lee offered to arbitrate, but the Unions refused its offer and opted to continue in federal court.  (Martin Decl., Ex. O.)

Sara Lee has now filed a motion for summary judgment.  The Unions ask that the Court deny the motion or, in the alternative, order arbitration.

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

**B.    Whether Sara Lee Breached Paragraph 5 of the Outsourcing Agreement**

**1.    Standard for Interpreting a Collective Bargaining Agreement**

The Court's construction of a collective bargaining agreement is governed by federal common law.  Agathos v. Starlite Motel, 977 F.2d 1500, 1508 (3d Cir. 1992).  To prove breach of a collective bargaining agreement, a plaintiff must show 1) the defendant had a contractual obligation; 2) the defendant breached that obligation; and 3) the damages sought by the plaintiff "foreseeably flowed from the breach."  Id. at 1509.

"Although a collective bargaining agreement differs from an ordinary contract, the meaning of a collective bargaining agreement may be determined by applying general rules of contract law as long as federal labor law does not provide a conflicting rule." Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning, 934 F.2d 35, 40-41 (3d Cir. 1991) (citations omitted).  If a collective bargaining agreement's terms are clear and unambiguous, a court must enforce them as written.  Eastmount Constr. Co. v. Transport Mfg. & Equip. Co., 301 F.2d 34, 39 (8th Cir. 1962).  The Court may not consider extrinsic evidence if the relevant collective bargaining agreement provisions are unambiguous. Howe v. Varity Corp., 896 F.2d 1107, 1110 (8th Cir. 1990).

### 2.      Whether There Was a Remaining Term of the Agreement

Under Paragraph 5, Sara Lee was obligated to "require any new subcontractor to accept the then current labor agreement **for the remaining term of that agreement**."  Whether the Court examines only the plain language of the contracts at issue – the CBA, Outsourcing Agreement, Extension Agreement, and the new collective bargaining – or, whether the Court accepts the Unions' argument that Paragraph 5 is ambiguous and examines extrinsic evidence of

intent, the conclusion is the same: there was no remaining term of the CBA for

Sara Lee to require TDI to accept.

### a)      Retroactivity Date

The Extension Agreement signed by the Unions on October 6, 2010 and

Sara Lee on September 26, 2010 did not extend the CBA for the transport drivers

such that there was a "remaining term of that agreement" for TDI to accept.  The

new Sara Lee collective bargaining agreement, signed October 28, 2011, is

retroactive to October 10, 2010.  This retroactivity was anticipated and required

by the Extension Agreement itself.  The CBA lasted through October 9, 2010.  As

of October 10, 2010, the new collective bargaining agreement, which does not

cover the TDI transport drivers, was in effect and the prior CBA was not in effect.

The original CBA's term had to have ended on October 9, 2010 for the new

collective bargaining agreement's term to have begun on October 10, 2010.

Therefore, "there is no remaining term of the agreement" on or after October 10,

2010.

### b)      The Purpose of the Extension Agreement

The Extension Agreement states that the parties "agree to extend the

current Collective Bargaining Agreement . . . covering bargaining unit employees

14

at the Company's operations located in Fergus Falls, Minnesota."  It does not

explicitly state whether it covers the transport drivers or not.  Given the Court's

analysis of the effect of the retroactivity of the new collective bargaining

agreement, it is not necessary to analyze the purpose of the Extension

Agreement; however, the Court notes that further analysis leads to the same

conclusion.

The undisputed evidence requires the conclusion that the CBA was not

extended for the transport drivers after October 9, 2012.  It is uncontested that, by

August 26, 2010, the Unions, DeBuck, Sara Lee, Grissom, and the transport

drivers all knew that the drivers' employment with Sara Lee would end on

October 9, 2010.  Therefore, when DeBuck signed the Extension Agreement on

October 6, a few days before the outsourcing, DeBuck and everyone else

involved knew that there would be no need for the transport drivers to have a

new collective bargaining agreement with Sara Lee.  DeBuck admits that he has

never heard of a collective bargaining agreement for non-employees.  (Martin

Decl., Ex. A, DeBuck Dep. 78, 80.)  The purpose of the extension was to

temporarily extend the CBA for the mechanics and sales employees who would

be continuing with Sara Lee after October 9, 2011, while the parties negotiated a

new collective bargaining agreement. (<u>See</u> Martin Decl., Ex. H, Grissom Dep. 21-24 (testifying that Sara Lee did not have the obligation or ability to bargain with the transport drivers once they were no longer Sara Lee employees).) This purpose is apparent from the Extension Agreement itself, which provides that all items negotiated during the extension period for the new collective bargaining agreement would be retroactively applied to the extension period.

On October 6, 2010, when DeBuck signed the Extension Agreement, there would be no reason to retroactively apply collective bargaining terms reached through December 31, 2010 concerning the transport drivers because they were becoming TDI employees in three days and would be subject to a different collective bargaining agreement.

Through the extension, Sara Lee and the Unions agreed to continue to operate under the status quo, but did not actually extend the "term" of the CBA. As DeBuck testified, the "term" of the CBA was October 14, 2007, through October 9, 2010, and the new collective bargaining agreement started on October 10, 2010. (DeBuck Dep. 17, 46-47.)

<blockquote>

**c)**   **Sara Lee Lacked Bargaining Authority to Extend the CBA for the Outsourced Transport Drivers**

</blockquote>

Furthermore, Sara Lee lacked bargaining authority with regard to the transport drivers.  When the Unions signed the Extension Agreement on October 6, 2010, they were already bargaining with TDI for the Fergus Falls transport drivers.  Grissom testified that, when he signed the extension, he was Sara Lee's authorized bargaining representative only as to the sales and mechanics employees, not as to the transport drivers.  The Outsourcing Agreement itself provides: "The Union acknowledges that the Company has satisfied all bargaining obligations with respect to the decision and effects of the Company's decision to outsource the Fergus Falls, MN transport/mechanic function."  At the time that the Extension Agreement was negotiated and executed, the Unions were bargaining with TDI concerning the conditions after October 9, 2010 for the transport drivers, not Sara Lee.  If the Unions sought an extension of the CBA for the transport drivers, they would have needed to obtain that extension from TDI, not Sara Lee.

**d)   Sara Lee's Alternative Argument**

Because the Court concludes that there was no remaining term of that agreement, and, therefore, Sara Lee did not breach the CBA, the Court need not

address Sara Lee's argument that it never subsequently changed subcontractors as required by Paragraph 5 of the Outsourcing Agreement.

### C.  Bonebrake Grievance

The Court grants summary judgment to Sara Lee on the issue of Bonebrake's grievance.

First, Bonebrake was not a Sara Lee employee at the time of his accident and termination.  At that time, the Sara Lee CBA no longer applied to the transport drivers, and TDI and the Unions had not agreed to a collective bargaining agreement.  Thus, neither Sara Lee nor TDI had an obligation to allow the grievance.

Second, the Unions cannot show damages.  Bonebrake did not request the grievance and testified that it would make no difference to his employment.  He admits that his own "stupidity" caused the accident and there is no evidence to dispute TDI's evidence that Bonebrake lied on his application to TDI.  As a matter of law, Bonebrake did not suffer any damages from the lack of a grievance.  Additionally, the Court notes that TDI has offered to allow the grievance subject to the condition that the grievance will have no precedential value regarding the issue of whether the Sara Lee CBA is still in effect with regard to the transport drivers.

18

### D.     Arbitration

The Court holds that the Unions have waived their right to arbitration.

The Unions' Complaint alleges that this dispute is subject to mandatory

arbitration and, in response to the Unions' motion for a preliminary injunction,

Sara Lee agreed.  However, when Sara Lee then offered to arbitrate, in January

2011, inexplicably, the Unions then refused to attend arbitration and continued

with this litigation for more than one year.  The Unions now ask this Court to

deny Sara Lee's motion for summary judgment but, if the Court does not find in

their favor, they seek arbitration.

The CBA requires arbitration.  (See CBA Art. 10).  However, at this late

stage in the litigation, the Unions have now waived their right to arbitration.

"A party may be found to have waived its right to arbitration if it: (1) knew

of an existing right to arbitration; (2) acted inconsistently with that right; and (3)

prejudiced the other party by these inconsistent acts."  Lewallen v. Green Tree

Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007) (citation omitted).

> A party acts inconsistently with its right to arbitrate if the party
> [s]ubstantially invoke[s] the litigation machinery before asserting its
> arbitration right.  A party substantially invokes the litigation
> machinery when, for example, it files a lawsuit on arbitrable claims,
> engages in extensive discovery, or fails to move to compel
> arbitration and stay litigation in a timely manner.

Id. (citations omitted).

The first prong is easily met: the Unions claimed a right to arbitration in October 2010 and in their Complaint, so they knew of the right to arbitrate.

The second prong was met when on January 11, 2011, Sara Lee made an unconditional offer to arbitrate and the Unions refused to arbitrate. The Unions then substantially invoked the litigation machinery by deposing witnesses, filing motions to compel, filing other motions, and obtaining substantial discovery. The Unions have never filed a motion to compel arbitration, despite an admonishment on this issue from Magistrate Judge Brisbois in March 2012. (See [Docket No. 149] Mar. 30, 2012 Order at 25-26.)

The third prong has been met because Sara Lee was prejudiced by having to proceed with more than one year of discovery and motion practice, which would not have occurred in arbitration. Now, after discovery has closed, the Unions seek arbitration. The Unions have not only not asserted a known right to arbitration, they have refused to abide by it, have taken advantage of federal discovery and motion practice, and now seek to use arbitration as Plan B if the Court does not rule in their favor. The Unions have waived their right to arbitration.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Defendant's Motion for Summary Judgment [Docket No. 136] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   September 26, 2012          s/ Michael J. Davis
                                     Michael J. Davis
                                     Chief Judge
                                     United States District Court